### 74737. CULLEN et al. v. TIMM.
#### (360 SE2d 745)

DEEN, Presiding Judge.

Appellants Cullen and Boylan were roommates of appellee Timm at Hunter Field, near Savannah, Georgia. On the evening on which the automobile collision occurred which gave rise to the action below, appellee was in his room watching television and writing a letter when Cullen and Boylan came in and suggested that he accompany them to a concert in Savannah. Appellee (somewhat reluctantly, according to his testimony) agreed to attend the concert, and the three proceeded downtown in Timm's automobile, with Timm at the wheel. During the evening, prior to starting out for the concert, each of the three had consumed "a beer or two."

In the course of the trip to town Timm stopped at between 15 and 20 stop signs and red traffic lights; on at least two occasions, however, according to testimony, the appellants had urged Timm not to wait until the light changed to green, but to go on through the intersection after pausing. On both these occasions Timm, seeing no traffic or "cops" in the vicinity, had acceded to Cullen's and Boylan's urging and had proceeded through the red light. On the second occasion, however, Timm's car collided with an oncoming vehicle. Cullen, who according to undisputed testimony was not wearing his seat belt, was thrown from the car; Boylan, who did have his seat belt on, remained in the vehicle, but both sustained fractures, contusions, and other injuries, Cullen being the more seriously injured of the two.

At trial there was undisputed testimony that after the accident appellant Cullen, on some five or six occasions, voluntarily rode as a passenger in Timm's car with Timm driving, and that Boylan rode with Timm at least twice. The trial court charged the jury on, *inter alia*, comparative negligence, assumption of the risk, and joint venture. The jury awarded each plaintiff/appellant $10,000 in general damages, and made additional awards to Cullen; i.e., $25,000 for future medical expenses and $15,000 for future lost earnings.

Plaintiffs moved for a new trial on the general grounds; on the ground of erroneous jury instruction on comparative negligence, duty of ordinary care, assumption of risk, and joint venture; and on the additional ground that the giving of identical $10,000 awards in general damages to both plaintiffs was so grossly disproportionate to the greater magnitude of Cullen's injuries as to suggest bias, prejudice, gross mistake, or improper motive on the part of the jury. After denial of the motion, Cullen and Boylan now appeal, enumerating as

error (1) the trial court's overruling of the motion for new trial, with the concomitant inference of gross mistake or improper motive on the jury's part; and (2), (3), (4), the allegedly improper instruction to the jury on comparative negligence, assumption of risk, and joint venture. *Held*:

1. It is well settled that such matters as negligence, ordinary care, comparative negligence, and assumption of risk are to be resolved by the jury. *McKinney & Co. v. Lawson*, 180 Ga. App. 550, 551 (349 SE2d 763) (1986); *Eyster v. Borg-Warner*, 131 Ga. App. 702 (206 SE2d 668) (1974). It is also the jury which assesses the credibility of witnesses and the weight to be assigned to the evidence. *Young v. State*, 232 Ga. 176 (205 SE2d 307) (1974); *Armour v. State*, 154 Ga. App. 740 (270 SE2d 22) (1980); *Causey v. State*, 154 Ga. App. 76 (267 SE2d 475) (1980).

In the instant case the record clearly indicates that the jury, after considering the evidence, found negligence on the part of defendant/appellee Timm, in that it assessed against him a total of $60,000 in damages, $50,000 payable to appellant Cullen and $10,000 to appellant Boylan. The record also clearly indicates that the evidence authorized charges on comparative negligence and assumption of risk. The record is less clear, however, as to whether the evidence regarding joint venture was legally sufficient to authorize that jury charge. There was Timm's testimony that the plaintiff/appellants were the instigators of the ill-fated ride; plaintiff/appellants testified that neither had his own means of transportation and routinely rode with Timm whenever going off the base, without reimbursing him in any manner for the transportation. There was also testimony that both voluntarily rode with Timm several times after the collision; that each of the plaintiff/appellants, during the ride on the crucial night, urged Timm to disregard at least one traffic signal, including the one at the intersection where the collision occurred; and that appellant Cullen was not wearing a safety belt. "It is the duty of the court to charge the jury on the law 'as to every controlling, material, substantial and vital issue in the case.' " *Berger v. Plantation Pipeline Co.*, 121 Ga. App. 362, 364 (173 SE2d 741) (1970); cited in *Fowler v. Gorrell*, 148 Ga. App. 573 (251 SE2d 819) (1978).

A careful review of the facts, however, shows that the "joy ride" of these three Army roommates to a local musical concert was in the eyes of the law a mutually agreed "joint trip to a concert." Though appellee Timm indicated he had some reservations about leaving the barracks that night and some "cajoling" occurred, it is clear that the decision to drive the jeep with the two passengers was, in final import, the sole decision of Timm. Moreover, though there was a dispute in the evidence whether Timm, of his own volition and in disregard of the caution of his passengers, "ran" several red lights or ran one or

two red lights only at the urging of his passengers, there is no dispute, and Timm candidly conceded, that the ultimate decision to run the red light rested solely in him. On two occasions Timm said he was not proud of the fact he had succumbed to "peer pressure," or poor advice. Such testimony can only mean Timm recognized that it was he and he alone who held ultimate operational authority over the vehicle. To make his understanding crystal clear, Timm stated that he was the driver and the final decision was his. There was additional evidence that the two passengers were nothing more than guests in the vehicle, who contributed nothing to the costs of operation and could make nothing more than suggestions.

It is clear that in order for occupants of an automobile to be involved in a joint venture, there must be not only a joint interest in the purpose of the enterprise (in this case going to a concert) but also an equal right, express or implied, to direct and control the conduct of one another in the activity causing the injury (in this case the operation of the automobile). *Holland v. Boyett*, 212 Ga. 458 (93 SE2d 662) (1956); *Keaton v. Fenton*, 147 Ga. App. 579, 580 (249 SE2d 629) (1978). The purpose of the venture thus is not the same as the causation of the injury, and the charge on joint venture was therefore inappropriate and thus in error. It is still necessary, however, to measure that error for harm. *Jackson v. Kight & Sons*, 159 Ga. 584 (126 SE 379) (1924); *Adrian Housing Corp. v. Lucas*, 144 Ga. App. 186, 190 (240 SE2d 732) (1977).

The verdict of the jury reflects that it heard three avenues for denying liability against Timm or granting damages to Cullen and Boylan. If it believed that Cullen and Boylan contributed to their own injuries, assumed the risk of Timm's negligence, or aided and encouraged Timm's causative negligence, the jury was told to reduce or deny the right to recover damages. The jury perforce had to reject the probability that Cullen and Boylan were in joint control of the vehicle or necessarily had to believe that if they were, joint control merely reduced their right of recovery. The charge on comparative negligence also authorized such a reduction, and the charge on assumption of risk, if accepted, equally would prohibit a recovery. The conclusion is inescapable that the error in this charge was harmless. See *McClure v. Ga. Power Co.*, 171 Ga. App. 257, 260 (3) (319 SE2d 93) (1984).

2. As to the disproportion allegedly inherent in the jury's awarding identical sums ($10,000) in general damages to appellant Boylan, the less seriously injured of the two, and to appellant Cullen, who sustained more extensive injuries, the standard for the award of general damages for pain and suffering is the enlightened consciences of fair and impartial jurors. OCGA § 51-12-12; *Wayco Enterprises v. Crews*, 155 Ga. App. 775 (272 SE2d 745) (1980). The general rule on appeal of an award of damages is that a jury's award cannot be suc-

cessfully attacked so as to warrant a new trial unless it is so flagrantly excessive or inadequate, in the light of the evidence, as to create a clear implication of bias, prejudice, or gross mistake on the part of the jurors. *Atlanta Transit System v. Robinson*, 134 Ga. App. 170 (213 SE2d 547) (1975); *Johnson v. Cook*, 123 Ga. App. 302 (180 SE2d 541) (1971). Even though the evidence is such as to authorize a greater or lesser award than that actually made, the appellate court will not disturb it unless it is so flagrant as to "shock the conscience." *Kiker v. Davis*, 103 Ga. App. 289 (118 SE2d 861) (1961); *Brown v. Svc. Coach Lines*, 71 Ga. App. 437 (31 SE2d 236) (1944). Other than the allegedly disproportionate awards themselves, plaintiff/appellants presented no scintilla of evidence, either on motion for new trial or on appeal, to substantiate an allegation of juror impropriety. Moreover, the trial court's approval of the verdict creates a presumption of correctness that will not be disturbed absent compelling evidence. Id.; *Langran v. Hodges*, 60 Ga. App. 567 (4 SE2d 489) (1939).

Although, as noted in Division 1, supra, there is some dispute as to whether appellants overbore appellee's will in persuading him to run the traffic signals or even to go out that night at all, the evidence is undisputed that appellant Cullen was not wearing his seat belt, while appellant Boylan was. See generally *Kirkland v. Williams*, 172 Ga. App. 595 (323 SE2d 891) (1984). This factual distinction alone would authorize the jury in the case *sub judice* to take into consideration such issues as ordinary care, comparative negligence, and assumption of risk with special reference to Cullen, and to reduce accordingly what might conceivably have been a larger award of general damages. See *Jordan v. Ellis*, 148 Ga. App. 286 (250 SE2d 859) (1978).

We presume neither to second-guess the jury nor to urge that, on the basis of the evidence, jurors should have concluded that Cullen, although entitled to special damages because of the nature and extent of his injuries, was entitled to a larger award of general damages, also. In the light of the evidence, the award of general damages to Cullen was not so disproportionately small as to warrant the grant of a new trial.

*Judgment affirmed. Birdsong, C. J., and Pope, J., concur.*

DECIDED SEPTEMBER 8, 1987.

*Thomas R. Taggart, Laura A. Marcantonio*, for appellants.
*Richard B. Eason, Jr., Carolyn J. Kennedy*, for appellee.